STATE OF CONNECTICUT *v.* CHARLES O'CONNOR

Decided October 17, 1958

*David Shea,* for the defendant.

*Albert S. Bill,* state's attorney, for the state.

By THE DIVISION. The defendant, age twenty-four, pleaded nolo contendere to a charge of arson and on

November 20, 1956, was sentenced by the Superior Court to a term in state prison of not less than six nor more than twelve years.

He had had a grudge against one D.V., a resident of Newington, to such an extent that after making inquiry and being directed to one M.S., he offered to pay the latter a sum of money to beat up D.V. Apparently nothing occurred along this line, but on October 20, 1955, after meeting M.S., the defendant procured two gallons of gasoline. The two of them then set fire to the porch and trellis of the house in which D.V. lived and drove away. Four persons were asleep in the house, which was in darkness at the time. By chance, D.V. was awakened and carried his crippled father to safety. While awaiting trial, defendant became mentally ill and was committed to the Norwich State Hospital on the ground he was unable to understand the nature of the proceedings. He was released September 18, 1956, when he was considered to have recovered from the psychotic episode for which he had been committed. Examination by two doctors thereafter appointed by the court confirmed the defendant's ability to understand the nature of the proceedings against him. They made report to the court of the diagnosis and prognosis of the defendant's mental and emotional condition.

The criminal record of the defendant which the sentencing court had before it was as follows:

June 21, 1954—West Hartford—violation of rules of the road—fined.

May 6, 1955—Waterbury—violation state park laws—bond forfeited.

November 18, 1955—Hartford—passing stop sign —nolled on payment of fine.

The court also had a presentence investigation report of the adult probation department, together with psychiatric reports of three doctors.

Defendant's grievance is that he should not serve twice as long as his codefendant, M.S., whom defendant urges was morally more responsible than himself, and requests that his minimum term be reduced to afford an earlier opportunity to appear before the board of parole. His codefendant, then twenty-one years old, was sentenced to the state reformatory at Cheshire for five years and one day. The minimum sentence imposed by the court upon the defendant being substantially equal to that given to his codefendant, the defendant's comparison is not made upon the basis of the sentences as imposed but upon the minimum time required to be served before becoming eligible for consideration for parole. This basis is not a sound one. There is no assurance that either will gain parole at the earliest time possible. The fact that the parole eligibility rules of the reformatory may happen to operate more leniently upon the codefendant is immaterial, as he is in a different institution under a different regime. The defendant has the benefit of the same rules as others confined to state prison. The mere fact that the maximum sentence of the defendant is double or more than that imposed on his codefendant affords no sound basis of comparison without the consideration of other pertinent surrounding circumstances. If sentences were to be measured solely on the basis of the crime committed, it would effectuate fixed punishments, defeating the fundamental of individualized punishment and the purposes of the indeterminate sentence provided by statute. The stress is not alone upon the criminal act but upon the make-up of the offender and the chances of his reform. The objective of the prevention of the repetition of the crime by an offender is

the same whether its commission has its source and basis in a normal or abnormal personality. The public interest, safety and welfare should be paramount.

Arson of a dwelling is a heinous crime, fraught with danger to human life. In the instant case, tragedy was narrowly averted by mere chance. The sentencing court had the benefit of the presentence investigation report on both defendants, and the medical reports on the present defendant, which we have examined. It would serve no useful purpose to discuss the details of them. Although able to stand trial, the fact is that the defendant was and had been in need of psychotherapeutic help. He was given the benefit of such correctional and remedial facilities as were available to the court appropriate to the circumstances Accordingly, the sentence should stand.

Thim, Ryan and Pastore, Js., participated in this decision.